**In re NEW HAVEN FOUNDRY, INC., Debtor.**

**No. 01–62954–R.**

United States Bankruptcy Court, E.D. Michigan, Southern Division.

Nov. 19, 2002.

John G. Adam, Southfield, MI, Benjamin G. Bair, Shelby Township, MI, Donald F. Baty, Jr., David K. Foust, Office of the Attorney, Niraj Ganatra, Detroit, MI, Becket & Lee, Malvern, PA, Richard A. Green, Bingham Farms, MI, Rose A. Houk, Lansing, MI, Richardo I. Kilpatrick, Auburn Hills, MI, Timothy J. Kramer, Detroit, MI, Frank Krycia, Mt. Clemens, MI, Michael D. Lieberman, Southfield, MI, Sebastian Lucido, Utica, MI, Todd R. Mendel, Detroit, MI, James A. Plemmons, Alicia Schehr, Detroit, MI, Kurt A. Steinke, Sterling Heights, MI, Kenneth A. Tardie, Mt.Clemens, MI, Charles Turnbull, Sterling Heights, MI, Barbara R. Van Zomeren, Brainerd, MN, Stanley L. de Jongh, Detroit, MI, for creditor.

Stephen M. Gross, Bingham Farms, MI, for debtor.

*Opinion Granting GM's Motion
for Relief from Stay to
Allow Setoff*

STEVEN W. RHODES, Chief Judge.

This matter is before the Court on a motion filed by General Motors for relief

from the automatic stay to permit set-off. DaimlerChrysler Corp. (DCX) filed an objection. The Court conducted a hearing, requested additional briefing from the parties, and took the matter under advisement.

## I.

Wesley International, an affiliate of New Haven Foundry, Inc., filed for chapter 11 protection on June 29, 1998. GM provided postpetition financing to Wesley, secured by a security interest in all of Wesley's post-petition assets, including any accounts receivable owing from New Haven to Wesley. On June 25, 1999, following Wesley's default on the financing order, the court granted GM relief from the automatic stay. The order required any entity in possession of postpetition collateral to turn over such collateral to GM. Pursuant to this order, on September 17, 1999, GM demanded that New Haven pay GM all amounts that New Haven owed to Wesley. New Haven began making monthly payments to GM of $5,000. Payments were made through July of 2001, totaling $110,000.

On November 27, 2001, an involuntary bankruptcy petition was filed against New Haven. An order for relief was entered on February 6, 2002. At the time of the involuntary petition, New Haven still owed GM $403,517.20 on the Wesley receivables and GM owed New Haven $126,975.90 for component parts New Haven manufactured for GM.

## II.

GM contends that it has a right of set-off because both the debt that it owes to New Haven and the amount that New Haven owes to GM arose pre-petition. Further, GM contends that the debts are mutual.

DCX argues that it has a valid perfected security interest in all inventory, accounts, contract rights and accounts receivable, including the sums that New Haven owes GM. DCX contends that because its lien is paramount to any asserted interest of GM, the motion for set-off should be denied.

DCX also asserts that the debts at issue lack mutuality. DCX contends that GM is attempting to set-off a debt it owes New Haven against a debt owed to it by Wesley, an affiliate of New Haven. DCX contends that the intercorporate relationship between New Haven and Wesley is insufficient to meet the mutuality requirement. DCX further asserts that GM's attempt to meet the mutuality requirement by claiming to be the assignee of an obligation owed by New Haven to Wesley is unavailing.

## III.

11 U.S.C. § 553 provides, in part:

Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case[.]

11 U.S.C. § 553(a).

■ "The right to setoff is a widely recognized common law right which allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'" *Gordon Sel-Way, Inc. v. United States (In re Gordon Sel-Way)*, 270 F.3d 280, 290 (6th Cir.2001) (quoting *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 18, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995)). "Although the Bankruptcy Code does not provide an explicit right to

setoff, the common law right is generally preserved in bankruptcy." *Id.*

■ State law governs the substance of the setoff claim under § 553. *See Durham v. SMI Indus. Corp.,* 882 F.2d 881, 883 (4th Cir.1989). The law in Michigan regarding setoff was set forth in *Siciliano v. Mueller,* 2001 WL 1699801 (Mich.App. Dec.28, 2001):

> Generally, the setoff and the action must be between the same parties and in the same capacity or right, and the court can look through the transactions and nominal parties to determine the real parties in interest. A setoff requires a mutuality of debt between the same real parties in interest, where the demands of the mutually indebted parties are set off against each other and only the balance recovered. However, setoff rests on opposing claims that are enforceable in their own right. A claim for setoff need not arise out of the same transaction as that sued on. If the parties are mutually indebted, there may be a setoff regardless of whether the debt arises out of the same contract or transaction.

*Id.* at *6 (citations omitted).

■ As a general rule, mutuality requires that the debts be owed between the same parties acting in the same capacity but not necessarily of the same character. *Lubman v. Sovran Bank, N.A. (In re A & B Homes, Ltd.),* 98 B.R. 243, 248 (Bankr. E.D.Va.1989).

> The distinction between the concept of "capacity" and the requirement that the obligations be owed between the "same parties" is that the latter refers to the identity of the parties whereas the former refers to their relationship to each other. . . .
>
> As a general rule, the concept of capacity requires that the parties must each owe the other something in his or her own name, and not as a fiduciary. . . . [I]f A in his individual capacity owes $100 to B, but B owes $50 to A in A's capacity as a trustee of a trust, or as a fiduciary or agent for some other party, the obligations are not mutual because they are not owed between the parties acting in the same "capacity."

*In re Nuclear Imaging Sys., Inc.,* 260 B.R. 724, 734–35 (Bankr.E.D.Pa.2000) (quoting 5 COLLIER ON BANKRUPTCY, ¶ 553.03[3][c] at 553–32 (15th ed.1999)).

The purchase orders between GM and New Haven contained the following provision:

**SETOFF/RECOUPMENT:**

> In addition to any right of setoff or recoupment provided by law, all amounts due to Seller shall be considered net of indebtedness of Seller and its affiliates/subsidiaries to Buyer and its affiliates/ subsidiaries; and Buyer shall have the right to setoff against or recoup from any amounts due to Seller and its affiliates/subsidiaries from Buyer and its affiliates/subsidiaries.

(See General Terms, GM's Motion, Ex. J at ¶ 23.)

■ It is undisputed that the debts at issue arose pre-petition. However, DCX argues that the mutuality requirement is not met because New Haven's debt to GM originated as a debt owed by New Haven to Wesley. This does not preclude a finding of mutuality. Wesley assigned its New Haven accounts receivable to GM and GM has a legally enforceable debt against New Haven pursuant to the order granting relief from stay. *See Davidovich v. Welton (In re Davidovich),* 901 F.2d 1533, 1536 (10th Cir.1990) (Setoff requires that each debt be valid and enforceable.). Accordingly, New Haven is indebted to GM and the mutuality requirement is satisfied.

## IV.

■ DCX also asserts that any right of set-off GM may have is subordinated to DCX's perfected security interest. The parties dispute whether Revised Article 9 of the Uniform Commercial Code is applicable here. M.C.L.A. § 440.9702, the transition rule, provides:

(1) Except as otherwise provided in this part, this amendatory act applies to a transaction or lien within its scope, even if the transaction or lien was entered into or created before this amendatory act takes effect.

(2) Except as otherwise provided in subsection (3) and sections 9703 through 9709, both of the following apply:

(a) Transactions and liens that were not governed by this article before this amendatory act takes effect, were validly entered into or created before this amendatory act takes effect, and would be subject to this amendatory act if they had been entered into or created after this amendatory act takes effect, and the rights, duties, and interests flowing from those transactions and liens remain valid after this amendatory act takes effect.

(b) The transactions and liens may be terminated, completed, consummated, and enforced as required or permitted by this amendatory act or by the law that otherwise would apply if this amendatory act had not taken effect.

MCLA § 440.9702.

MCLA § 440.9709 provides:

(1) This amendatory act determines the priority of conflicting claims to collateral. However, if the relative priorities of the claims were established before this amendatory act takes effect, this article

as in effect before this amendatory act takes effect determines priority.

MCLA § 440.9709.

GM's setoff rights are based on the June 15, 1999, order granting relief from the stay in the Wesley bankruptcy case. That order authorized GM to take possession of postpetition collateral in New Haven's possession and approved GM's agreement with New Haven permitting GM to setoff the amounts that it owed to New Haven against the amounts that New Haven owed to it. DCX obtained its security interest in April of 2001. Thus, the relative priorities were established before the July 1, 2001, effective date of Revised Article 9 in Michigan, and therefore the Revised Article 9 does not apply.

Former MCLA § 440.9318 provides in part that the rights of an assignee are subject to:

(b) any other defense or claim of the account debtor against the assignor which accrues before the account debtor receives notification of the assignment.

M.C.L.A. § 440.9318(1)(b).

The application of this section was explained in the treatise, Practicing Law Institute, SETOFFS AND RECOUPMENTS IN BANKRUPTCY, 837 PLI/Comm 739 (2002):

[A] secured party (the assignee), under U.C.C. § 9–318(1), is ... subject to "any other defense or claim of the account debtor against the assignor which accrues before the account debtor receives notification of the assignment." U.C.C. § 9–318(1)(b). These are "setoff" claims. *See* Steven O. Weise, U.C.C. Article 9: Recent Developments, 52 The Business Lawyer 1591, 1611–12 (Aug. 1997). Article 9 of the UCC expressly states that it does not apply to any right of setoff, so its substantive rules (e.g., creation, perfection and other filing re-

quirements) are irrelevant in asserting setoff. U.C.C. § 9–104(i); *In re First American Mortgage Co.,* 212 B.R. 479, 485 (Bankr.D.Md.1997) ("Article 9 does not apply to any right to setoff. . . ."). That setoff is excluded from Article 9 means only that the setoff right itself is not a "security interest." The UCC still governs the priority between a right to setoff and a perfected security interest. *In re Davidson Lumber Sales, Inc.,* 66 F.3d 1560, 1565 (10th Cir.1995); *In re Apex Oil Co.,* 975 F.2d 1365 (8th Cir. 1992); *In re Calore Express Co.,* 199 B.R. 424, 433 (Bankr.D.Mass.1996) (Creditor holding a perfected security interest has priority over an account debtor with a setoff right if the setoff "did not arise until after the perfection of the security interest."). Generally, the debtor cannot assign greater rights than it possesses. Therefore, if the debtor would lose to a creditor's right of setoff, so must the secured creditor, who is, after all, asserting only a derivative right. Thus, a secured creditor with priority over other creditors is still subject to setoff as a counterclaim or defense. *See, e.g., Rochelle v. United States,* 521 F.2d 844, 855 (5th Cir.1975) (subordinated claims still subject to setoff by United States); *Hayden v. Standard Accident Ins. Co.,* 316 F.2d 598 (9th Cir.1963) (surety's subordinated claim still subject to setoff); *United States v. Cherry Street Partners L.P. (In re Alliance Health of Fort Worth, Inc.),* 240 B.R. 699 (N.D.Tex.1999) (Assignment gives only the rights the assignor had subject to any defenses; under the UCC, a right to setoff prevails over a perfected security interest unless the account debtor had actual notice of the security interest before the setoff right accrued.); *In re Ben Franklin Retail Store, Inc.,* 202 B.R. 955, 961 (Bankr.N.D.Ill.1996) (bank's right of set-

off has priority over a secured party with a perfected interest in proceeds); *In re Defense Servs., Inc.,* 104 B.R. 481 (Bankr.S.D.Fla.1989) (United States can set off subordinated claim); *In re Don's Elec., Inc.,* 65 B.R. 399, 403 (Bankr. W.D.Wis.1986) (bank's security interest in accounts receivable still subject to setoff); *see generally, United Cal. Bank. v. Eastern Mt. Sports,* 546 F.Supp. 945, 963–64 (D.Mass.1982) (setoff allowed against secured creditor only if claim "accrues" before assignment).

*Id.* at 769. *See also Commerce Bank, N.A. v. Chrysler Realty Corp.,* 244 F.3d 777 (10th Cir.2001); *Bank of Waunakee v. Rochester Cheese Sales, Inc.,* 906 F.2d 1185 (7th Cir.1990); *In re Telephone Warehouse, Inc.,* 259 B.R. 64 (Bankr. D.Del.2001) (Setoff right has priority over secured claim.); *In re Nuclear Imaging Sys., Inc.,* 260 B.R. 724, 741 (Bankr. E.D.Pa.2000) (Setoff rights have priority over security interest; "one who claims a property interest has no right to payment greater than the entity who granted the interest.");*Frank v. ITT Commercial Fin. Corp. (In re Thompson Boat Co).,* 230 B.R. 815, 827 (Bankr.E.D.Mich.1995) (Pursuant to § 440.9318(1)(a), the secured party's interest is subject to the claims of the account debtor.); *USBI Co. v. Otha C. Jean & Assocs. (In re Otha C. Jean & Associates, Inc.),* 152 B.R. 219, 223 (Bankr.E.D.Tenn.1993) ("Section 9–318 determines priority between [the account debtor's] right of set-off and the banks' security interest."). This authority overwhelmingly supports the conclusion that DCX's security interest is subject to GM's setoff rights.

Accordingly, GM's motion for relief from stay to allow setoff is granted. *See United States v. Parrish (In re Parrish),* 75 B.R. 14 (N.D.Tex.1987) (Valid right of setoff

constitutes "cause" for relief from the stay under 11 U.S.C. § 362(d)(1).).