**In re Kenneth B. HARRIS, Debtor.**

**Agricultural Federal Credit Union, Movant,**

v.

**Kenneth B. Harris, Respondent.**

**No. 01–10533–PM.**

United States Bankruptcy Court, D. Maryland, at Greenbelt.

March 30, 2001.

Diana C. Theologou, Law Offices of Cheryl E. Rose, Rockville, MD, for debtor.

Alfred Lawrence Toombs, Law Offices of Alfred L. Toombs, Greenbelt, MD, for movant.

Thomas L. Lackey, Bowie, MD, trustee.

## MEMORANDUM OF DECISION

PAUL MANNES, Chief Judge.

This matter came before the court upon two matters, a "Motion to Vacate Automatic Stay as to Property of Debtor's Estate" and "Debtor's Motion to Impose Sanctions for Willful Violation of Automatic Stay." The court has considered the motions, the opposition thereto, the memoranda, the oral arguments of the parties and the case file and has decided, for the reasons stated below, to deny both motions.

### Facts

The facts of this case are not disputed. Kenneth B. Harris ("Debtor") maintained share accounts with Agriculture Federal Credit Union ("AFCU"). Debtor also held a VISA credit card issued by AFCU pursuant to a Credit Card Agreement and Disclosure. The Credit Card Agreement granted to AFCU a consensual lien on Debtor's deposit accounts.

On January 16, 2001, Debtor filed a voluntary petition under Chapter 13. At the time the petition was filed, Debtor maintained a share account with AFCU with a zero balance. Further, as of the date of the petition, Debtor's AFCU credit card balance totaled $4,657.24.

One day after the bankruptcy petition was filed, Debtor made a deposit of $17,805.00 to his AFCU share account. The deposit was of Debtor's father's funds and was said to have been made to enable Debtor to purchase a vehicle for his father and to help Debtor in setting up a business as a handyman. Approximately two days later, AFCU, by letter, notified Debtor that it was declaring the unpaid credit card balance in default thereby rendering the balance due and payable. AFCU additionally advised Debtor that it had placed an administrative hold on the share account.

On January 31, 2001, AFCU filed a "Motion to Vacate Automatic Stay as to Property of Debtor's Estate," alleging that it was entitled to place an administrative hold on Debtor's share account in the amount of the unpaid credit card balance, in accordance with the Supreme Court's holding in *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995). It further requested that the court vacate the automatic stay so that it may enforce its rights under the Credit Card Agreement.

Debtor opposed the requested relief and disputed AFCU's purported authority to place an administrative hold on the share account. Debtor further asserted that AFCU's actions amounted to a violation of the automatic stay and that, as a result, Debtor suffered damages in the form of numerous insufficient funds and late charges.[1]

### *Analysis*

### I. Setoff

■ AFCU's administrative hold on Debtor's funds was not authorized by the Supreme Court's holding in *Citizens Bank of Maryland v. Strumpf*. The Supreme Court's analysis, however, provides guidance to this court.

In *Citizens Bank of Maryland v. Strumpf*, as of the date of the filing of the bankruptcy petition, the debtor maintained a checking account at the bank and also was in default on a loan from the bank. Once the bankruptcy petition was filed, any rights to set off pre-petition debt were stayed by 11 U.S.C. § 362(a). To protect its setoff rights, the bank placed an administrative hold on the debtor's account. *Citizens Bank of Maryland v. Strumpf*, 516 U.S. at 17–18, 116 S.Ct. 286. The issue

before the Supreme Court was whether an administrative hold, an account "freeze," or a refusal to pay upon demand, constituted a setoff in violation of the automatic stay. *Id.* at 19, 116 S.Ct. 286. The Supreme Court found that an administrative hold is not a setoff and that an administrative hold is permissible while the bank seeks relief from the court from the automatic stay. *Id.* at 19–21, 116 S.Ct. 286.

*Citizens Bank of Maryland v. Strumpf* is somewhat factually similar to the case before this court. AFCU's reliance upon the Supreme Court's decision is correct but for one critical difference—AFCU placed an administrative hold upon post-petition funds rather than upon pre-petition assets.

Upon the filing of a bankruptcy petition, a bankruptcy estate is created. The filing of a petition also triggers the protection of the automatic stay set forth in 11 U.S.C. § 362(a). The bankruptcy estate is comprised of, among other specified property, all legal or equitable interests of a debtor as of the commencement of the case. 11 U.S.C. § 541(a)(1). When the debtor files a petition under Chapter 13, estate property includes all property that the debtor acquires after the commencement of the case. 11 U.S.C. § 1306(a)(1). Funds deposited by Debtor in the AFCU share account after the petition was filed would, therefore, constitute estate property.

Section 542(b) of Title 11 provides that an entity owing a debt that is property of the estate and that is matured, payable on demand, must pay such debt to the trustee, *except* to the extent such debt may be offset under 11 U.S.C. § 553 against a claim against the debtor. "Setoff" is addressed in 11 U.S.C. § 553, that provides, in part, that 11 U.S.C. § 362(a) does not

---

**1.** Debtor filed a "Debtor's Motion to Impose Sanctions for Willful Violation of Automatic Stay," requesting actual damages, costs, attorney's fees and punitive damages.

affect any right of a creditor to set off a mutual debt owing by such creditor to the debtor that arose before the commencement of the case against a claim of such creditor against the debtor that arose before the commencement of the case. As described by the Supreme Court in *Citizens Bank of Maryland v. Strumpf,* the setoff right is preserved in bankruptcy. It is the act of setting off the debt that is prohibited by the automatic stay. 11 U.S.C. § 362(a)(7).

The Supreme Court explained that a setoff occurs, according to the majority of jurisdictions, when (i) a decision to effectuate a setoff is made; (ii) action is taken to accomplish the setoff; and (iii) the setoff is recorded. Recording of the setoff entails reducing the account balance by the amount of debt owed to the bank. *Bank of Maryland v. Strumpf,* 516 U.S. at 19, 116 S.Ct. 286. Setoff also entails mutuality of debt. For example, the agreement between a bank and a depositor consists, in part, in a depositor's right to payment by the bank upon demand of the deposited funds. The bank, therefore, is indebted to the depositor. If the depositor, in turn, borrows funds from the bank, the depositor is indebted to the bank. If both debts are due and owing, mutuality of debt exists.

Where a debt arises post-petition, no mutuality of debt exists; therefore, no right to set off exists. *See In re Passafiume,* 242 B.R. 630, 633–34 (Bankr.W.D.Ky. 1999). If Debtor had funds on deposit with AFCU and Debtor had defaulted on the Credit Card Agreement, then AFCU could, at the time a petition was filed, place an administrative hold on funds on deposit up to the amount of the defaulted debt and seek relief from the automatic stay. Under this hypothetical, AFCU and Debtor had mutually due and payable prepetition debt.

■ The facts of the subject case differ from this hypothetical. After the petition was filed, there existed no mutuality of debt because the debt owed by AFCU to Debtor—i.e., the payment of funds on deposit upon demand—arose after the commencement of the case. Since AFCU had no right to set off, it had no right to place an administrative hold on the account. By doing so, AFCU breached its agreement with Debtor, the depositor, by not paying the debt upon demand and violated the automatic stay. Accordingly, the court finds that AFCU is required to release the administrative hold placed on Debtor's share account. Further, the court finds that, despite the finding that AFCU violated the automatic stay, it did not do so wilfully. Therefore, Debtor will not be awarded damages.

## II. Cash Collateral

■ AFCU's Credit Card Agreement and Disclosure provides:

> CONSENSUAL LIEN. As permitted by law, You grant and consent to a lien on Your deposit accounts with Us ... and any dividends due or to become due to You from Us to the extent You owe on any unpaid Credit Card balance.

It is undisputed that AFCU held a consensual lien. It is further undisputed that Debtor maintained a share account with AFCU and owed credit card debt to AFCU.

AFCU argues that Debtor used post-petition cash collateral without prior permission from it, a secured creditor. Because it did not consent and the court did not grant approval of the use of the cash collateral and no adequate protection was offered by Debtor, AFCU was entitled to protect its interest, in accordance with the Federal Credit Union Act, by placing an

administrative hold on Debtor's share account.

■ AFCU characterizes the post-petition deposit made by Debtor as "cash collateral" by reliance upon 11 U.S.C. § 363(a). Section 363(a) provides:

In this section, "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and *an entity other than the estate have an interest* and *includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties* subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title. (emphasis added)

The court disagrees with AFCU that the funds deposited post-petition by Debtor with AFCU represented cash collateral as the cash deposited did not include "proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts...." Further, the court finds that AFCU no longer had an interest in the funds deposited post-petition as its consensual lien encompassed pre-petition assets. AFCU had, at the time the funds were deposited, an agreement to pay Debtor upon demand. As explained by the United States Bankruptcy Court for the Northern District of New York, funds deposited by a depositor become property of the bank. A depositor has a contract claim against the bank if the bank fails to pay upon demand. The bank, therefore, does not have a security interest in monies already belonging to it. Rather, it has an interest in an

intangible chose in action. *In re Brian J. Orr,* 234 B.R. 249 (Bankr.N.D.N.Y.1999) (citing *Citizens Bank of Maryland v. Strumpf,* 516 U.S. 16, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995); *In re Bakersfield Westar Ambulance, Inc.,* 123 F.3d 1243, 1246 (9th Cir.1997)). AFCU has an interest in Debtor's estate—a claim as a secured creditor. It does not have an interest in post-petition deposits.

Section 552 of Title 11, entitled "Postpetition effect of security interest," provides:

(a) Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.[2]

The Credit Card Agreement was entered into before the commencement of the case and the property, the cash, was acquired by Debtor after the commencement of the case. AFCU's security interest has no effect post-petition. However, AFCU argues that 11 U.S.C. § 552(b)(1) applies in this case. This section provides:

Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and *if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, or profits of such property,* then such security interest extends to such proceeds, product, offspring, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement

---

**2.** "Security Agreement," pursuant to 11 U.S.C. 101(50) means an agreement that creates or provides for a security interest. "Se-

curity interest" means a lien created by agreement. 11 U.S.C. 101(51).

758

and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise. (emphasis added)

Again, the court is not in agreement with AFCU that the post-petition deposit represented proceeds, product, offspring or profits of property acquired by Debtor before the commencement of the case.

The court finds that the funds deposited post-petition were not cash collateral as defined by 11 U.S.C. 363(a). Further, the post-petition deposit is not subject to any lien resulting from the Credit Card Agreement pursuant to 11 U.S.C. § 552. AFCU must release the administrative hold placed on Debtor's share account.

An appropriate order will be entered.